IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

Case No.:

DANIELLE CHRISTOPHER,

       Plaintiff,

vs.

BLOOMIN' BRANDS, INC.,

       Defendants.

_____/

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff DANIELLE CHRISTOPHER (hereinafter "Plaintiff") sues the above Defendant BLOOMIN' BRANDS, INC. (hereinafter "Defendant") for race discrimination under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981; and disability discrimination and retaliation under the Americans with Disabilities Act, 42 U.S.C. § 12112(a). In support of her claims, Plaintiff alleges as follows:

**PARTIES**

1. Defendant is a Delaware corporation that owns and operates restaurants throughout the United States. They are headquartered in Tampa, Florida, and their principal address is 2202 North West Shore Blvd., 5th Floor, Tampa, Florida 33607.

2. Plaintiff was an employee at Defendant's restaurant named "Outback and Carrabba's Express," located at 13025 US-301, Suite 104, Riverview, Florida 33578.

3. Plaintiff was employed by Defendants from December 20, 2022, to April 1, 2021, as a front-of-house employee. At all times material hereto, Plaintiff was and

is a resident of Hillsborough County, Florida.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this action, pursuant to 28 U.S.C. § 1331, because this action involves federal questions under the Americans with Disabilities Act, Title VII of the Civil Rights Act, and 42 U.S.C. § 1981.

5. This Court has original and personal jurisdiction over this action because the Defendant is engaged in business within the State of Florida, and the action complained of occurred in Florida.

6. Venue is appropriate in the Tampa Division of the Middle District of Florida pursuant to 28 U.S.C. § 1391(b)(2) and the Rule 1.02(c) of the Local Rules of the United States District Court, Middle District of Florida, because Defendant owns and operate facilities throughout the Hillsborough County, Florida, and the unlawful conduct complained of occurred within the Tampa Division of this Court.

## GENERAL ALLEGATIONS

7. Plaintiff was hired by Defendant on December 20, 2022, and placed in the position of "front-of-house employee." Her duties included working the restaurant's curbside pick-up window, handling the restaurant's online orders, and expediting dishes as needed.

8. Plaintiff is a member of a protected class as an African American woman.

9. Throughout the duration of her employment, she was paid $5.64 per hour, and received tips.

10. At the time she was hired and throughout the duration of Plaintiff's

employment, Defendant was aware that Plaintiff had another job. Plaintiff disclosed during her interview that she worked her "day job" from 7:00 a.m. until 5:30 p.m. on Mondays through Thursdays.

11. Accordingly, she disclosed, she would be available to work for Defendant from 6:00 p.m. until closing time from Monday to Thursday, and would have open availability on Fridays, Saturdays, and Sundays.

12. In or around February 2021, Plaintiff requested a minor change to her schedule. Specifically, she requested that she only be scheduled from 3:00 p.m. to 8:30 p.m. on Fridays.

13. Plaintiff disclosed to her manager that she was requesting this schedule change because her workload was causing her debilitating migraines, and that she was under the care of a physician as a result.

14. As a result of her migraines, Plaintiff's ability to see, eat, sleep, read, concentrate, think, and work were substantially limited. Specifically, Plaintiff's symptoms included intense, throbbing pain in her head, nausea, vomiting, and extreme sensitivity to light and sound, among others.

15. Initially, Plaintiff's requested schedule change was granted.

16. Less than a month after requesting the schedule change, Plaintiff began experiencing retaliation from her managers for making the request. For example, on March 26, 2021, Plaintiff was yelled at and admonished by her managers in front of her co-workers for leaving at the end of her scheduled shift. Their yells and admonishment included "do you think it's fair to the team that you get to leave at 8:30 on Fridays?", and "It is not fair that you leave at 8:30 when others

have been working a double." They berated Plaintiff on this issue for several minutes before she was allowed to leave.

17. Immediately prior to and during Plaintiff's employment, Defendant had a policy and practice of providing schedule changes to other employees who did not suffer from disabilities, and who were white. Specifically, at least two (2) white employees also requested schedule changes to accommodate their school schedules, and both were granted without question and without subsequent reprimand or admonishment.

18. The night of the incident, Plaintiff told her managers that she would need to take the weekend off because she was not feeling well, due to symptoms from her migraines. Plaintiff's manager, Jason Curlott, demanded that she produced a doctor's note to justify the absence, or she would be terminated.

19. Prior to this request, Mr. Curlott had not required other employees to produce doctor's notes to take short amounts of time off from work due to illness or disability. Nevertheless, he demanded that Plaintiff do so, or face termination.

20. Plaintiff responded that she would produce the doctor's note, but would need to do so on Monday, as her doctor's office was closed for the night (this request occurred on a Friday night after 8:00 p.m.) and would not re-open until Monday morning.

21. When Plaintiff was not able to produce a doctor's note the very next day, she was terminated.

22. Other non-black employees took 1-2 days off for illness, sickness, or disability during Plaintiff's employment, but were never required to produce a

4

doctor's note to justify the illness and were not terminated for the absence.

23. Plaintiff did request the doctor's note from her physician; however she was terminated before she was able to produce it to her manager. That note is attached hereto as Exhibit "A."

24. Prior to her termination, Plaintiff had not received any other employee disciplinary notices or reprimands.

25. Prior to her termination, Plaintiff became aware that her manager, Jason Curlott, was offering compensation for driving miles to white employees who worked in front-of-house positions (as Plaintiff did). This compensation was not offered to Plaintiff.

26. Plaintiff has satisfied all conditions precedent to filing this action. Specifically, Plaintiff filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC), who subsequently issued a Notice of Right to Sue. That Notice is attached hereto as Exhibit "B."

27. Plaintiff has hired the undersigned attorneys and agreed to pay them a reasonable fee.

### COUNT I: DISCRIMINATION UNDER THE ADA
**(Failure to Accommodate)**

28. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-27 above as if fully stated within this count.

29. Plaintiff was a qualified individual, as defined by the Americans with Disabilities Act, 42 U.S.C. § 12111. Specifically, she was qualified to perform the essential duties of her job, with or without reasonable accommodations.

30. Plaintiff suffered from the disability of debilitating migraine headaches. This condition substantially limited Plaintiff's ability to see, eat, sleep, read, concentrate, think, and work. The symptoms that caused these limitations were intense, throbbing pain in her head, nausea, vomiting, and extreme sensitivity to light and sound, among others.

31. Plaintiff made a request for accommodations on March 26, 2021, when she asked her manager for the weekend off to recover from her migraine-related symptoms.

32. Plaintiff suffered the adverse employment action of termination the very next day, on March 27, 2021.

33. Plaintiff was subjected to unlawful discrimination because of her disability when Defendant failed to provide her with a reasonable accommodation for her disability, and terminated her the day after Plaintiff requested a reasonable accommodation.

34. Defendant made no attempt whatsoever to engage in the requisite interactive process in order to identify a reasonable accommodation for Plaintiff, if they believed her requested presented an undue hardship.

35. Defendant failed to provide Plaintiff with an adequate opportunity to provide medical records supporting her request, and terminated her before her doctor's office was open and able to provide the records requested by Defendant.

36. Defendant's conduct was willful, intentional, and malicious, entitling Plaintiff to an award of punitive damages.

37. As a result of Defendant's discrimination, Plaintiff has suffered damages,

including compensatory damages, lost wages, lost benefits, future lost wages, emotional distress, prejudgment interest, attorney's fees and costs incurred in bringing this action, and other pecuniary damages.

### COUNT II: RACE DISCRIMINATION UNDER TITLE VII
**(Disparate Treatment)**

38. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-27 above as if fully stated within this count.

39. Plaintiff was a member of a protected class as an African American woman.

40. Plaintiff was employed by Defendant, within the meaning of the Civil Rights Act.

41. Plaintiff was qualified to do the job she was hired by Defendant to perform.

42. Plaintiff was subjected to the adverse employment action of termination on March 26, 2021.

43. On March 26, 2021, and other dates prior to her termination, Defendant treated similarly situated employees outside of Plaintiff's class more favorably by offering them compensation in the form of driving miles that was never offered to Plaintiff.

44. Throughout her employment, Defendant treated similarly situated employees outside of Plaintiff's class more favorably by approving schedule change requests without subsequent reprimand or admonishment.

45. Defendant treated similarly situated employees outside of Plaintiff's class more favorably by allowing them to take small amounts of time off from work due to illness or sickness without needing to prove or justify the request with a doctor's

note or other medical record.

46. Defendant's discriminatory conduct was willful, intentional, and malicious, entitling Plaintiff to an award of punitive damages.

47. As a result of Defendant's discrimination, Plaintiff has suffered damages, including compensatory damages, lost wages, lost benefits, future lost wages, emotional distress, prejudgment interest, attorney's fees and costs incurred in bringing this action, and other pecuniary damages.

## COUNT III: RETALIATION UNDER THE ADA

48. Plaintiff incorporates and adopts all allegations contained within paragraphs 1-27 above as if fully stated within this count.

49. As detailed above, Plaintiff engaged in statutorily protected conduct by requesting a reasonable accommodation in the form of two (2) days off from work to recover from symptoms related to her disability.

50. At the time of the request, Plaintiff explained to her manager that she needed the time off due to migraine symptoms and had previously disclosed her disability of migraine headaches.

51. The day after the request, on March 27, 2021, Plaintiff was subjected to the adverse employment action of termination.

52. Plaintiff's termination was caused by her request for accommodations, which is protected expression under the Americans with Disabilities Act. Specifically, Defendant demanded at 8:00 p.m. on a Friday night that Plaintiff immediately produce a doctor's note to justify her requested absence. She explained that her physician's office was closed for the weekend, and she would

8

need until Monday to get the note. When she was not able to produce the note the next day, she was immediately terminated.

53. Due to the close temporal proximity between Defendant's awareness of the protected expression and Plaintiff's termination, there is sufficient circumstantial evidence of a causal connection between the expression and the termination.

54. Defendant's retaliatory conduct was willful, intentional, malicious, and/or done with reckless disregard to the law, entitling Plaintiff to an award of punitive damages.

55. As a result of Defendant's discrimination, Plaintiff has suffered damages, including compensatory damages, lost wages, lost benefits, future lost wages, emotional distress, prejudgment interest, attorney's fees and costs incurred in bringing this action, and other pecuniary damages.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 28(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by this Complaint and on all other issues so triable.

DATED this 31st day of May, 2022.

Respectfully submitted:

/s/ *Nicholas J. Castellano, II*
Nicholas J. Castellano, II, Esq.
Florida Bar Number: 0118601
Email: nick@buckmanandbuckman.com

**BUCKMAN & BUCKMAN, P.A.**
2023 Constitution Boulevard

9

Sarasota, FL  34231  
Telephone:  (941) 923-7700  
Fax:             (941) 923-7736

*Attorneys for Plaintiff, Danielle Christopher*